HARRIS, Chief Judge.
In 1988, Efrem D. Law shot Tarsha Anderson, then sixteen and an honors student, three times in the head leaving her in a vegetative state.
Law pled nolo contendere in exchange for the State filing a nol pros on a separate shooting charge and for a sentencing cap of fifty years. Law reserved the right to appeal an improper departure. His scoresheet recommended a sentencing range of twelve to seventeen years. The court departed from the recommended range and sentenced Law to the Department of Corrections for a period of fifty years.[1] The judge’s stated reasons are in the sentencing transcript as is his stated intention to enter a written order as soon as he has reviewed the cases cited by the parties. This was appropriate procedure at the time.
The court, at sentencing, did enter a contemporaneous written reason for departure (written on the scoresheet) stating, “Reasons on record from sentencing hearing.” Law filed his direct appeal on February 7, 1990. On April 26, 1990, Pope v. State, 561 So.2d 554 (Fla.1990), was released. The next day, perhaps in response to Pope, the sentencing judge issued a more detailed written departure order stating:
I have departed from the Sentencing Guideline in this case for a number of reasons which were announced in Open Court following a Sentencing Hearing in which evidence and argument were presented and considered from both sides on January 26, 1990. The Sentence of fifty years in prison was based on the reasons announced on the Record at that time which I’m also summarizing separately through this Order.
The victim in this case, Tarsha Anderson, is presently in a vegetative state with no chance of recovery from her completely paralyzed condition as a result of the brutal actions of the Defendant. Testimony at the hearing establishes that she experienced awareness and great pain following the shooting as she attempted to crawl to safety before lapsing into unconsciousness from which she won’t return. The tragic toll this attack has taken on her, her caring family, and her community is immeasurable. No amount of print in a transcript could demonstrate or express the anguish and frustration that I saw as her father testified or the tension and anxiety that pervaded the atmosphere of the proceedings. From the evidence presented, I find the following aggravating circumstances to have been established by much more than a preponderance of the evidence:
1. The Victim experienced excessive physical and emotional trauma at the hands of the Defendant. See § 921.001(7) Fla.Stat. (1989); Jackubowski v. State, 494 So.2d 277 (Fla.App. 2 DCA 1986); Thompson v. State, 483 So.2d 1 (Fla.App. 2 DCA 1985); Davis v. State, 458 So.2d 42 (Fla. App. 4 DCA 1984).
2. Similarly, his actions rendered her permanently disabled. See, Massard v. State, 501 So.2d 1289 (Fla.App. 4 DCA 1986) and Ross v. State, 478 So.2d 480 (Fla.App. 1 DCA 1985).
3. The egregious nature of the circumstances under which the victim’s attempted murder was effectuated in this case, shows conduct of the defendant beyond the ordinary case. See McCall v. State [State v. McCall], 524 So.2d 663 (Fla.1988); Hall v. State, 517 So.2d 692 (Fla.1988); and, Vanover v. State, 498 So.2d 899 (Fla.1986).
4. The actions of the defendant on the evening of this offense in light of his past record establish clearly that his violent propensities are escalating and a guideline sentence would not safeguard society from his future dangerousness. See, White v. State, 548 So.2d 765 (Fla.App. 1 DCA 1989); Cochran v. State, 534 S.2d [sic] 1165 *1104 (Fla.App. 2 DCA 1988); and, DeGroat v. State, 489 So.2d 1163 (Fla.App. 5 DCA 1986).
5. The actions of the defendant in this case have visited incredible personal, psychological and economical trauma upon the victim’s family in this case. Again, this is another area where the cold transcript cannot begin to express the depths of anguish and hardship that was shown by the victim’s father as he testified on these very real issues that this Court finds to be present in this case quite unlike the “usual” or “ordinary” attempted murder prosecution. Only the victim’s death or a miracle could extricate her and her family from their present condition and neither is expected soon. On the other hand, the certainty of the defendant being released quite soon under a guideline sentence is something they should be able to be spared from and should not have to endure also.
6. Severability of Reasons — In the event that a reviewing Court should find any one, or several, of these reasons for departure to be unsupportable, I hereby state that the same sentence would have been imposed for any one reason alone without regard to the others.
The record reflects that Law had gone from a previous second-degree felony conviction to the present life felony conviction, thus justifying the court’s finding of escalation. In this Rule 3.800 motion, Law does not challenge the legal sufficiency of the grounds for his departure sentence; his argument is based on the timing of the filing of the departure order and the effect of Smith v. State, 598 So.2d 1063 (Fla.1992).
Clearly, under Pope, a departure was acceptable if the trial court provided written reasons for departure. At that point, there was no requirement that the written reasons be contemporaneous. Therefore, even assuming that the notation on the scoresheet was inadequate, the late filing of the expanded written order in this case was not fatal to the sentence. However, the State requested, and we permitted, the matter to return to the trial court for a formal resentencing under Pope. The resentencing took place on June 11, 1990.
Although the supreme court in Ree v. State, 565 So.2d 1329 (Fla.1990), added the requirement that the written reasons must be filed contemporaneous with the sentencing, this decision was not rendered until July 19, 1990, over a month after the resentencing in this case. In any event, Ree, at the time, was held to be prospective only. Therefore, the record before this court, before Ree was decided, involved a sentencing in which (because the written departure order was adopted by the court at resentencing as its reason for departure) there was a contemporaneous written order justifying the departure. Law argues, however, that since Smith requires that we apply Ree to all cases in the pipeline at the time the mandate in Ree issued, and since we had not finally determined the original appeal in this case by that date, he is entitled to be resentenced within the guideline range. We disagree for two reasons.
First, the initial sentence itself was adequate to withstand a Ree attack. The notation on the scoresheet “Reasons on record from the sentencing hearing” was adequate to incorporate by reference his previously stated reasons into the contemporaneously written reason. This seems to more closely comply with the requirements of section 921.001(6), Florida Statutes, than does the departure sentence approval by the supreme court in Smith. In Smith, the court held that the judge’s dictation of his departure reason to the State for inclusion in a scoresheet which had not yet been prepared was adequate compliance even though the scoresheet, when prepared, failed to contain the reason for departure. In Smith, the judge wrote nothing, signed nothing, and approved or adopted nothing written indicating a valid reason for departure. It appeal's, therefore, that if the judge himself writes the notation incorporating by reference his earlier statements dictated to a court reporter, which statement actually appears in the record, this should be sufficient to sustain the sentence. See State v. Martin, 551 So.2d 600 (Fla. 4th DCA 1989), in which the court approved a notation to a “Barbera Plea” as *1105 sufficient compliance with the statute. See also, State v. Salley, 601 So.2d 309 (Fla. 4th DCA 1992), in which the court stated:
Given the plea colloquy in this case which reinforces the trial court’s determination to downward depart in order to assure that the appellee would be put in a drug treatment program, we are not required to cull through the record in search for reasons supporting the departure. See Pope v. State . . .
Likewise in this case, since the court succinctly stated the reasons for departure during the sentencing hearing, we are not required to “cull the record” in order to give effect to the court’s notation incorporating such reasons by reference. We think this meets the requirements of Pope.
Second, Pope only required that there be written reasons — not that the reasons be contemporaneous. In this ease, written reasons were provided, even if not contemporaneous. This fully complied with the law then in effect. And by the time Ree came along, Law had been properly resentenced in compliance with Pope — contemporaneous written reasons and all. Smith, therefore, has no application to this case.
AFFIRMED.
PETERSON, J., concurs.
DIAMANTIS, J., concurs specially, without opinion.

. This was subsequently reduced, in response to a prior motion, to forty years.